PEOPLE v WILSON

OPINION OF THE COURT

1. CRIMINAL LAW—JURY—COERCION OF JURY—NUMERICAL DIVISION OF JURY.

It is reversible error for a trial judge to ask a jury which is in disagreement as to their numerical division, because such an inquiry tends to have a coercive effect on the minority of the jury.

DISSENT BY HOLBROOK, P. J.

2. CRIMINAL LAW—JURY—SUPPLEMENTAL INSTRUCTIONS TO JURY—NUMERICAL DIVISION OF JURY—HARMLESS ERROR.

*An inquiry by a trial judge of a divided jury for their numerical division, followed by supplemental instructions that the jury continue their deliberations with proper regard and consideration for the opinions of others and that they make every reasonable effort to reach a verdict, is not coercive and does not constitute error resulting in a miscarriage of justice (MCLA 769.26).*

Appeal from Van Buren, David Anderson, Jr., J. Submitted Division 3 October 11, 1972, at Grand Rapids. (Docket No. 12899.) Decided December 6, 1972. Leave to appeal granted, 389 Mich 768.

Albert C. Wilson was convicted of attempted breaking and entering. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William C. Buhl,* Prosecuting Attorney, for the people.

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 372.

State Appellate Defender, by *Stuart M. Israel,* Assistant Defender, for defendant.

Before: HOLBROOK, P. J., and R. B. BURNS and TARGONSKI,* JJ.

R. B. BURNS, J. Defendant was convicted by a jury of attempted breaking and entering. MCLA 750.92; MSA 28.287 and MCLA 750.110; MSA 28.305. Defendant appeals his conviction. We reverse.

After approximately 90 minutes of deliberation the jury returned to the courtroom. The foreman advised the court that the jury was unable to agree upon a verdict, and the following colloquy occurred:

*"The Court:* Well, without saying for whom, how do you stand numerically?

*"Mr. Spicketts:* Eleven to one.

*"The Court:* Well, that is not very far from a verdict. You have been at this an hour and a half. You may be seated. I have previously instructed you that it is your duty to determine the facts from the evidence received in open court and to apply the law to the facts and in this way decide the case.

"I am now asking you to return to your jury room for further deliberations. In your deliberations, you should examine the questions submitted with proper regard and consideration for the opinions of others. You should listen to each other's arguments with an open mind and make every reasonable effort to reach a verdict.

"You will now return to your jury room and resume your deliberations.

*"The Court:* Any comments or objections to the additional instructions?

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"*Mr. Buhl [Prosecutor]:* No, your Honor.
"*Mr. Hanson [for the defendant]:* None, your Honor."

Defendant claims that the trial judge erred by asking the jury for numerical division of the jury.

This precise issue has not been ruled on by the Michigan Courts and there is a split of authority throughout the country. The Federal Courts have prohibited the court from inquiring as to a numerical division of a jury since *Brasfield v United States,* 272 US 448; 47 S Ct 135; 71 L Ed 345 (1926), wherein Justice Stone stated:

"We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

"The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this court from correcting the error. * * * This is especially the case where the error, as here, affects the proper relations of the court to the jury, and cannot be effectively remedied by modification of the judge's charge after the harm has been done."

We agree with Justice Stone that for a trial judge to ask the jury as to their numerical divi-

sion, when in disagreement, tends to have a coercive effect upon the minority of the jury.

Reversed and remanded for a new trial.

Targonski, J., concurred.

Holbrook, P. J. *(dissenting)*. The writer has carefully read the prevailing opinion and is unable to subscribe to the result obtained. Although this precise issue has not been ruled on by our Michigan Supreme Court, it appears that the test is whether or not supplemental instructions of the trial judge constitute coercion in obtaining a verdict from the jury. The inquiry by the trial judge as to how the jury stood numerically appears to be the crux of the issue presented on this appeal. To the writer's mind this inquiry was made not for the purpose of coercion, but only as an inquiry as to the possibility of the jury's arriving at a verdict. It is true that the Federal Courts have prohibited their trial courts from inquiring as to the numerical division of a jury since *Brasfield v United States,* 272 US 448; 47 S Ct 135, 71 L Ed 345 (1926). This rule has not been adopted by our State Supreme Court, applicable to the trial courts of Michigan. It appears to this writer that our present rules which require considering each case on its own merits are adequate to administer justice. Our Supreme Court delineated the rule for determining whether the supplemental instructions amount to coercion in *People v Pizzino,* 313 Mich 97, 103 (1945):

"In *Zeitz v Mara,* 290 Mich 161, 166 [1939], we said:

" 'Examination of the authorities shows that, when it is claimed that a jury has been coerced into returning a verdict, all of the facts and circumstances must be considered as well as the particular language used by the trial judge.' "

In the case of *People v Maxwell,* 3 Mich App 264, 267–268 (1966) it is stated as follows:

"The trial of this case had taken three days. It had started on Wednesday and had been given to the jury on Friday, when the jury began its deliberation at 4:45 p.m. At 5:31 p.m. the jury was recalled to the court-room and the following transpired:

" *'The Court:* Ladies and gentlemen of the jury, you have deliberated a little less than an hour but it is getting late and I wanted to inquire into the state of your deliberations.

" 'May I inquire if you have selected a foreman?

" *'Juror Crayton:* We have, and I am the foreman, Your Honor.

" *'The Court:* Your name?

" *'Foreman Crayton:* Crayton.

" *'The Court:* You have been here a long time today and in consideration of the fact that some of you have a long way to go in this city of Detroit, I wish to inquire of you, Mr. Foreman, if you feel you cannot arrive at a verdict within the next 15 minutes and, if so, I am inclined to dismiss you until tomorrow morning at 9:30.

" *'Foreman Crayton:* I do feel, your Honor, we would reach a decision within the next 15 minutes.

" *'The Court:* Do I understand that the majority of the jurors would rather go home and come back here tomorrow to continue deliberation or is it the other way around—let's take a vote—who would like to stay, with a show of hands, please?

" '[Whereupon all jurors raised their hands.]

" *'The Court:* Very well, I will release you to continue your deliberations again.

" 'You may return to the jury room.'

"The jury was then excused at 5:35 p.m. and returned with its verdict at 5:56 p.m.

"The appellant contends this action by the court amounted to coercion of the jury.

"We do not agree. A fair reading of this colloquy convinces us that it was a reasonable interrogation of the jury designed to obtain a considered verdict rather

than to force a hasty one. *See People v Pizzino,* 313
Mich 97 (1945), and *People v Kasem,* 230 Mich 278
(1925)."

Further light on the issue is given in *People v
Digione,* 250 Mich 206, 208–210 (1930). It is stated:

"The jury was out a long time, and, it seems, had
difficulty in reaching a verdict. They were permitted to
separate for the night. On their return into court the
following morning the judge made some remarks to
them and to a jury considering another case. He read to
them the oath of jurors, to 'well and truly try' the issue
and 'a true verdict give therein according to the law
and the evidence given you in open court.' He admon-
ished them to consider the evidence, cautioned that,
while 'reasonable men can reasonably differ about cer-
tain things,' they should not differ arbitrarily, and
further said, quoting in part:

" 'Well, let us see what the facts are back of that:

" 'A man said so and so; let us see if the evidence
back of that supports it. And as near as possible you
should keep your minds open, ready to discuss the
evidence. And if, at any time, there is a difference of
opinion as to what the evidence is in the court, we have
it all taken down and the stenographer will read it to
you. Any point that you are differing about. Or, if you
differ about the law, on any one question and one man
says the court said so and so, and the other says, no,
the court said so and so. Well, come in, and I will have
the charge read to you. But, the point is not to get set
over some point. But discuss it fully and fairly and
freely. Not with the idea of getting a verdict of guilty or
not guilty but with the idea of reaching a verdict which
is a verdict of twelve reasonable and intelligent citizens.

" 'And, it so happens that I can talk to both juries in
the same way. Now, today, I am going to send you out,
back to your jury rooms, to arrive at some kind of a
verdict if you can. Now, you understand I am not trying
to coerce you in any way, shape or manner, you have
your own minds and it is not for me in any way to
attempt to change that mind. I am simply attempting

to tell you that you should look at the matter fairly and freely and honestly just as you do any other matter.'

"Later in the day the jury returned for further instruction and the court read to them portions of the charge in response to their requests.

"Late in the afternoon the jury came in with the verdict. It is urged that it was coerced. We have given the unusual incident serious consideration, and are of the opinion that it does not amount to coercion, and we are constrained to hold it not reversible error."

Also see *People v Chivas,* 322 Mich 384 (1948); *People v Fleisher,* 322 Mich 474 (1948); and *People v Kasem,* 230 Mich 278 (1925).

The supplemental instruction was proper and the inquiry concerning the numerical standing of the jury did not add to or detract from the said instruction. Therefore this writer would deem the objected-to supplemental instruction as being harmless error. The question then arises whether or not under § 26 of Chapter IX, Act 175 of the Public Acts of 1927 (MCLA 769.26; MSA 28.1096) this inquiry as to how the jury stood numerically constitutes error resulting in a miscarriage of justice.

Under the facts in this case the writer is constrained to rule that the supplemental instruction and inquiry by the court did not constitute error resulting in a miscarriage of justice. I would therefore affirm the conviction.